## Richmond.

CAMPBELL & CO. v. NONPAREIL F. B. & K. CO. AND ALS.

February 17.

On the 29th of July, 1869, the Nonpareil F B & K Co. executed a deed of trust for the benefit of its creditors, conveying real estate located in Henrico county, within a mile of the corporate limits of the city of Richmond. The deed was admitted to record in the clerk's office of the county court of Henrico, on the 7th of August, 1869, and in the clerk's office of the chancery court of Richmond on the 30th of November, 1876. On the 3d of April, 1876, C & Co. recovered judgment against the grantor, which was duly docketed. On the 30th of June, 1875, the trustees sold and conveyed a portion of the trust property to a purchaser, whose deed was recorded in Henrico county on the 6th of November, 1875, and in the chancery court of Richmond on the 30th of November, 1876. In a suit brought to enforce the judgment lien— HELD :

1. The deed of trust not having been legally recorded prior to the rendition of the judgment, is absolutely void as to the judgment creditors, notwithstanding the trust had been executed by a sale and conveyance of the property ; for in this respect the statutes of registration make no distinction between executed and unexecuted trusts, but are designed to give notice of the state of the title as affected by successive alienations, as well as by encumbrances.

   *Quære :* Whether, if the sale had been made under a decree in a suit brought for the purpose, instead of being made by the sole act of the trustee, the consequences would have been the same? The *dicta* of Baldwin and Daniel, J's, in *Glazebrook's Adm'r* v. *Ragland*, 8 Gratt. 344, criticised.

2. The act of January 26th, 1877 (Acts 1876-7, p. 34), is wholly prospective in its operation, and does not validate a recordation invalid under previous laws, where rights have accrued under those laws.

3. Although the words of a statute are broad enough in their literal intent to comprehend existing cases, they must be construed as applicable to cases that may thereafter arise, unless a contrary intention is unequivocally expressed therein.

This was a suit in equity in the circuit court of Henrico county, brought in September, 1876, by Charles A. Campbell & Co., to subject a small parcel of land lying immediately adjoining the corporate line of the city of Richmond, to satisfy a judgment for $721, and interest and costs, the plaintiffs had recovered against the Nonpareil Fire-Brick and Kaolin Company of America. This parcel of land had at one time belonged to said company, and by deed bearing date the 29th of July, 1869, the company conveyed it in trust to secure a debt of $8,000. The land was sold by the trustees, and conveyed to the purchaser, John L. Logan, by deed bearing date the 30th day of June, 1875; and it was again sold and conveyed by Logan to Thomas K. Porter by deed bearing date the 15th of November, 1875. These two deeds were recorded in the clerk's office of Henrico county soon after their execution; but they were not recorded in the Richmond chancery court until the 30th of November 1876.

The only question in the cause in this court was whether the trust deed was properly recorded before the judgment was docketed. This deed was recorded in the clerk's office of the county court of Henrico on the 7th day of August, 1869, and in the clerk's office of the chancery court of the city of Richmond on 30th of November, 1876. The plaintiff's judgment was recovered on the 3d of April, 1876; and it was docketed in the clerk's office of the chancery court of Richmond on the 27th of May, 1876, and in the clerk's office of the county court of Henrico on the 9th of October, 1876.

The court below dismissed the bill; and the plaintiffs obtained an appeal to this court.

*W. W. Henry* and *W. P. Burwell,* for the appellants.

*Neeson* and *Wood Bouldin, Jr.,* for the appellees.

STAPLES, J., delivered the opinion of the court.

The appellees claim title to the property in controversy under a deed of trust executed by the Nonpareil Fire-Brick and Kaolin Company, for the benefit of its creditors, on the 29th of July, 1869. This deed was admitted to record in the clerk's office of the county court of Henrico, on the 7th of August, 1869. It was also recorded in the clerk's office of the chancery court for the city of Richmond, on the 30th of November, 1876. Before this latter recordation, on the 3d of April, 1876, the appellants recovered judgment against the Nonpareil Company, which was duly docketed in the clerk's office of the proper court. It is conceded that the land which is the subject of this controversy, is situated within a mile of the corporate limits of the city of Richmond. It is further conceded that, under the decisions of this court in *Blackford et als.* v. *Hurst,* 26 Gratt. 203, and *Burgess* v. *Belvin,* 32 Gratt. 633, a deed for property thus located must, under former laws, have been recorded in the chancery court of Richmond, and not in the county court of Henrico, to give it effect against creditors and purchasers. Inasmuch, therefore, as the deed of trust executed by the Nonpareil Company was not so recorded until after the judgment against that company was rendered, the land is subject to the lien of the judgment, unless there be something in the present case to take it out of the influence of those decisions and of the statutes of registration. The learned counsel for the appellee maintains that as the property embraced in the deed of trust was sold by the trustee, and the trust completely executed and performed by a conveyance to the purchaser, which was duly recorded

before the judgment was recovered, the lien of the judgment does not affect the title acquired under a sale from the trustee, although the deed of trust may not have been properly recorded.

The authority relied on in support of this proposition is an opinion of Judge Baldwin, concurred in by Judge Daniel, in *Glazebrook's Adm'r* v. *Ragland*, 8 Gratt. 332, 344, in which this language is used: "It is true that the terms of the statute, and its spirit too, embrace unrecorded deeds of trust and mortgages while they continue encumbrances—while they remain executory—but not after they have ceased to be encumbrances, and after they have been executed and extinguished by a sale or foreclosure, and a conveyance of the title to the purchaser."

The other two judges who sat in the case—Judges Allen and Moncure—did not agree with Judge Baldwin. Judge Moncure delivered a written opinion, which was concurred in by Judge Allen. It is proper to state that Judge Lomax, in the first volume of his Digest, p. 374, quotes, without endorsing or approving, the observations of Judge Baldwin, and he cites the same cases referred to by Judge Moncure in support of his opinion. These cases do not sustain the doctrine announced by Judge Baldwin. They, however, affirm the following proposition: When a suit is brought in a court of equity for the execution of a trust deed, a decree is rendered for the sale of the property, and a sale and conveyance made to the purchaser under the sanction of the court, the title of the purchaser is good against the judgment creditor of the grantor, although the deed of trust has never been recorded. If this doctrine can be sustained at all, it is upon the ground that all the parties interested in the property are before the court, and the purchaser holds not under the deed of trust, but under the decree, which is his muniment of title.

In tracing that title, he need not go back to the deed of

trust, but only to the proceedings and decree in equity under which he claims. I do not see with what propriety this doctrine can be invoked to show that an unrecorded deed of trust is valid against a judgment lien, where the sale and conveyance are made by the trustee himself, and not under the decree of a court. In such case the purchaser must trace his title through the unrecorded deed of trust. He must stand or fall by that title; and if the deed be invalid, he is without support. Under our statute all deeds of trust and mortgages are utterly void as to creditors and purchasers without notice, unless properly recorded. As to such creditors and purchasers, the title is to be regarded as remaining in the grantor. No distinction is made between deeds of trust executed and deeds of trust merely executory. Both the letter and the policy of the recording acts are opposed to any such distinction. The object of these acts is to give notice to all the world, not merely of encumbrance upon, but also of the successive alienations of the property. A person disposed to deal with a particular piece of property would, of course, look to the records to ascertain the precise condition of the title. If, upon examination, he traces no encumbrances or alienation, he would have the right to suppose that none existed, and he might safely act upon this presumption. Will it be pretended that this presumption loses any of its force because an adversary claimant of the property derived title from a deed by a trustee rather than a deed by the owner himself ?

In the case of *McClure* v. *Thistle's Ex'or*, 2 Gratt. 182, a deed was made by the debtor, the purchase money paid, and the purchaser placed in possession; but the deed was never recorded until after a judgment was obtained against the debtor. It was held by this court that the land in the hands of the purchaser was liable to the lien of the judgment. It is difficult to see any just distinction between that case and this. There, as here, the contract was com-

pletely executed by the conveyance to the purchaser, and the title of the owner completely divested before the judgment was recovered. There, as here, the original grantor had nothing upon which the judgment could operate, except that the plain provisions of the statute declared the unrecorded deed utterly void as to creditors.

The only exception to the operation of the recording acts, at least the only one now remembered, is found in the case of a valid parol contract, which is not required to be recorded, and, indeed, cannot be. In such case the purchaser, if his deed is declared void for the want of recordation merely, stands upon his pre-existing equitable right acquired before the execution of the deed. The grounds upon which this doctrine rests are stated fully in the opinions of this court in *Withers* v. *Carter*, 4 Gratt. 407, and *Floyd* v. *Harding, Trustee*, 28 Gratt. 401. They have, however, no application to the matter under discussion here. For these reasons, I think the lien of the appellants' judgment is not at all affected by the sale and conveyance of the property under the trust deed, from which the appellees derived title.

The next question to be considered is, whether the defective recordation of the trust deed has been cured by statute. The act of January 26th, 1877, is relied on for that purpose. In order to understand the operation and effect of that act, we must look to the act of March, 1867, found in (Acts of 1866–7, p. 34) the revised Code of 1873, p. 897, § 5. By this latter act it was provided that deeds in respect to property situate within a mile of the corporation limits of a city should be recorded in the hustings or corporation court of such city. But where, prior to the date of the act, deeds for property thus situated (that is, within a mile of the city limits) has been recorded in the county court, such recordation should be as valid as if made in the clerk's office of the hustings court. This provision was

wholly prospective in its nature. All that was meant was. that it should not be necessary to record the deed anew in the hustings court; but from and after the date of the passage of the act, the recordation in the county court should have the same effect as though made in the hustings court.

By the act of January 26th, 1877, all deeds in respect to property within the corporate limits of a city are to be recorded in the hustings court of such city; and with respect to the city of Richmond, the deed must be recorded in the chancery court. If the property be situate outside of the corporate limits of the city, the recordation must be in the county court, and not in the hustings or chancery court.

The act further provided that where, prior to its passage, a deed had been recorded in the county court, conveying property within a mile of the corporate limits of a city, it should not be necessary to record it anew in the hustings or chancery court, but the deed should be as valid as if it had been admitted to record in the clerk's office of those courts. In other words, a new recordation was not necessary; but *from and after the passage* of the act the previous recordation in the county court should constitute a valid recordation as to creditors and purchasers. The object of this provision is plain: It was to place all conveyances of property situate within a mile of the corporate limits of a city, which had been recorded in the county court prior to the act, upon the same footing with those which should be recorded after its passage. Another provision of the act requires all deeds in respect to property outside the corporate limits, which had been previously recorded in the hustings or chancery court, should be recorded also in the county court by the 1st of July, 1877. Thus it will be perceived the design of the framers of the act was to require all deeds in respect to property within the corporate limits to be recorded in.

the hustings or chancery court of the city, and all deeds in respect to property without the corporate limits to be recorded in the county court. The act was not intended to validate the recordation of a deed which was invalid under existing laws, and thus interfere with rights which had accrued under those laws. Like the act of 1867, it was wholly prospective in its nature, and was intended to render the deed valid as a recorded deed only from and after the passage of the act. A statute which undertakes to give a retrospective effect to an invalid recordation, and thus divert or interfere with the rights of creditors and purchasers, is, to say the least, of doubtful policy. Whether such legislation is within the constitutional power of the legislature is a question we need not now decide. The principle of law is well settled, that "although the words of a statute are broad enough in their literal extent to comprehend existing cases, they must be construed as applicable only to cases that may thereafter arise, unless a contrary intention is unequivocally expressed therein." This principle has been recognized by this court in numerous cases. One of the latest of these is the case of *Price, Ex'or,* v. *Harrison's Ex'or,* 31 Gratt. 104, in which the authorities are cited, and the whole subject fully discussed by Judge Burks.

Consistently with these authorities and principles, the act of January 26th, 1877, must be construed as wholly prospective in its operation. So considering it, its provisions are ineffectual to remedy the defective recordation of the deed of trust executed in 1869 by the Nonpareil Fire-Brick Company. The decree of the circuit court must, therefore, be reversed, and the cause remanded for further proceedings, in conformity with the views herein expressed.

Campbell & Co. v. Nonpareil F. B. & K. Co. and als.

The decree was as follows:

This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the appellant's judgment constitutes a valid lien on the land, with its appurtenances, in the possession of the appellee Porter, proper to be enforced by a court of equity, and the circuit court erred; instead of dismissing the appellant's bill, it ought to have retained the cause and proceeded to administer the proper relief, by enforcing such lien, according to the course and practice of the courts in such cases. It is therefore ordered and decreed, that the said decree of the 30th of March, 1877, be reversed and annulled, and the appellee Thomas R. Porter do pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here. It is further ordered and decreed, that the cause be remanded to the said circuit court to be there proceeded with in conformity with this decree.

DECREE REVERSED.